IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEVEN BRENT DICK,                                          Civ. No. 07-538-AA

       Petitioner,                                     OPINION AND ORDER

  v.

SHARON BLACKETTER,
Superintendent, EOCI,

       Respondent.

---

Dennis Balske
621 SW Morrison St., Suite 1025
Portland, OR 97205
    Attorney for Petitioner

Jonathan W. Diehl
Assistant Attorney General
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97310
    Attorneys for Respondent

AIKEN, Chief Judge:

    Petitioner, an inmate at Eastern Oregon Correctional Institution, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner asserts several claims of ineffective assistance of counsel and prosecutorial misconduct.

1 - OPINION AND ORDER

For the reasons given below, the petition is denied.

## I.   BACKGROUND

In 2001, petitioner was charged with numerous counts of sexual abuse. The charges arose from petitioner's abuse of A.B., a boy who was under 14 years old when the offenses were committed. During trial, A.B. testified that he and petitioner became acquainted when petitioner began constructing a home on property adjacent to A.B.'s house. A.B. testified that petitioner began abusing him during the fall of 1988, when A.B. was seven years old, and that the abuse continued until the spring of 1994, when A.B. was thirteen years old. In 1999 and 2000, petitioner disclosed the abuse to several persons, including his mother.

After trial in May 2002, a jury found petitioner guilty of twenty counts of Sexual Abuse in the First degree. The trial court sentenced petitioner to consecutive five-year indeterminate prison sentences with mandatory minimum sentences on the first five counts, and concurrent minimum sentences on the remaining counts.

Petitioner's direct appeal was dismissed on his own motion, and he subsequently filed a petition for post-conviction relief (PCR) in state court. Petitioner asserted several claims of ineffective assistance of trial counsel, but the PCR court denied relief. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Dick v. Blacketter, 207 Or. App. 767, 143 P.3d 570 (2006), rev. denied, 342 Or. 299, 152 P.3d 902 (2007). Petitioner now seeks federal review.

2 - OPINION AND ORDER

## II. DISCUSSION

Petitioner alleges two grounds for relief. In ground one, petitioner asserts three claims of ineffective assistance of counsel. Specifically, petitioner claims that trial counsel: 1) failed to object to the admission of hearsay statements on confrontation grounds; 2) failed to investigate A.B.'s background for impeachment evidence; and 3) failed to investigate and present witnesses and documentary evidence showing that the time frame of the alleged abuse, as described by A.B., was inaccurate.[1] In ground two, petitioner claims that the prosecution withheld a police report containing information that could have been used to impeach A.B.'s credibility.

### A. Procedural Default/Actual Innocence

Respondent argues that petitioner's claims based on counsel's failure to investigate and prosecutorial misconduct are barred from federal review, because petitioner failed to present these claims to the highest state court and is now procedurally barred from doing so.

A state habeas petitioner must exhaust all available state court remedies – either on direct appeal or through collateral proceedings – before a federal court may consider granting habeas corpus relief.  28 U.S.C. § 2254(b)(1)(A); see also Baldwin v.

---

[1] In his petition for writ of habeas corpus, petitioner alleged eight separate claims of ineffective assistance of counsel; however, petitioner waived five of those claims in his supporting memorandum.

3 - OPINION AND ORDER

Reese, 514 U.S. 27, 29 (2004). In doing so, a petitioner must "fairly present" federal constitutional claims to the state's highest court, thus providing state courts the opportunity to resolve claims of constitutional error. Reese, 514 U.S. at 29-30; Picard v. Connor, 404 U.S. 270, 276 (1971).

If a claim was not fairly presented to the highest state court and no state remedies remain available, the "technical" requirements of exhaustion are met. However, the claim remains barred from federal review through procedural default. See O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999); Coleman v. Thompson, 501 U.S. 722, 731-32 (1991). Only in exceptional circumstances may a federal court consider unexhausted and procedurally barred claims: 1) the petitioner demonstrates cause for the procedural default and prejudice from the constitutional error;[2] or 2) the lack of federal review would result in a "fundamental miscarriage of justice." Schlup v. Delo, 513 U.S. 298, 314 (1995); Coleman, 501 U.S. at 750.

Petitioner concedes that he has procedurally defaulted on claims alleging counsel's failure to investigate and prosecutorial misconduct. Petitioner does not assert cause for the default and resulting prejudice; instead, petitioner argues that the court

---

[2]Cause must be "*external* to the petitioner, something that cannot be fairly attributed to him," that impeded his efforts to comply with the state's procedural rules. Coleman, 501 U.S. at 753. Prejudice is actual harm resulting from the alleged constitutional violation. Vickers v. Stewart, 144 F.3d 613, 617 (9th Cir. 1998).

4 - OPINION AND ORDER

should consider his defaulted claims under the "miscarriage of justice" exception.

Under this exception, a petitioner may open a "gateway" to federal review of unexhausted and defaulted claims if the petitioner presents evidence of "actual innocence." Schlup, 513 U.S. at 315, 324; Boyd v. Thompson, 147 F.3d 1124, 1127 (9th Cir. 1998) ("A fundamental miscarriage of justice occurs when a constitutional violation has probably resulted in the conviction of one who is actually innocent.") (citation omitted). To demonstrate actual innocence, a petitioner must present "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup, 513 U.S. at 324.

Further, "a petitioner may pass through the Schlup gateway by promulgating evidence that *significantly undermines or impeaches the credibility of witnesses presented at trial*, if all the evidence, including new evidence, makes it 'more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" Gandarela v. Johnson, 286 F.3d 1080, 1086 (9th Cir. 2002) (quoting Schlup, 513 U.S. at 327) (emphasis added). Importantly, "[t]he required evidence must create a colorable claim of actual innocence, that the petitioner 'is innocent of the charge for which he [is] incarcerated,' as opposed to legal innocence as a result of legal error." Id. at 1085 (quoting Schlup, 513 U.S. at 321).

Petitioner argues that the new evidence he presents would have impeached A.B.'s testimony and provided trial counsel with a new strategy for impugning A.B.'s credibility.

Petitioner first presents a police report describing complaints of usual contacts reported by A.B.'s mother and a follow-up interview with A.B. Exhibit A. During A.B.'s interview, he reported that an individual named Arturo telephoned A.B. at his place of employment to request A.B.'s assistance in starting a telephone sales business. A.B. asked how Arturo obtained his work number, and Arturo replied that he obtained it from A.B.'s brother. A.B. agreed to meet Arturo at his residence later that night. Arturo served wine to A.B. and offered him cocaine, an offer A.B. eventually accepted. A.B. reported that Arturo and his wife repeatedly questioned A.B. about his employment availability, and A.B. told them his presence was required at an upcoming trial. Arturo's wife then asked A.B. about the trial, and A.B. disclosed that he had been sexually abused as a child. A.B. reported that a friend later told him that Arturo's wife worked for petitioner's trial counsel, and A.B.'s brother denied providing information to Arturo and had no knowledge of A.B.'s workplace. A.B. also reported that an unknown man contacted him at work and asked questions about his prior employment, and that an unknown woman took pictures of him at work.

Petitioner argues that the police report shows that A.B. was "paranoid," and petitioner's attorney attests that if she had known

6 - OPINION AND ORDER

of the report, she would have employed a trial strategy arguing that petitioner was a victim of A.B.'s paranoia.  See Exhibit E.

Petitioner also presents other impeachment evidence that he claims undermines A.B.'s testimony and credibility.  For example, petitioner submits the affidavit of his mother asserting that she laundered petitioner's clothing during the time of the abuse, and that he did not wear button down jeans or white underwear as testified by A.B.  Exhibit B.

Petitioner also submits evidence that A.B.'s grades suffered during the fourth and fifth grades, during the time of his parents' divorce, and that his parents argued about financial matters after their divorce.  Amended Exhibit C, Exhibit I.  Petitioner claims this evidence shows that A.B. was in the midst of family turmoil during the time frame of the abuse.

Petitioner next offers evidence that A.B. was terminated from his employment in August 2002, several months after the trial, because of absenteeism and falsifying time records.  Exhibit D.

Petitioner also presents evidence purporting to show that neither he nor his parents lived in Tualatin during the time that A.B. testified petitioner wanted to meet him in Tualatin, and that the rooms and foundation of his house were not completed when A.B. testified that the abuse occurred there.  Exhibits F-H, J-K.

Petitioner argues that he establishes "actual innocence," because the case was a "credibility contest," and his newly presented impeachment evidence renders it more likely than not that

7 - OPINION AND ORDER

no reasonable juror would have convicted him.  I disagree.

Petitioner's actual innocence claim "relies on an attempt to discredit prosecution witnesses, rather than affirmatively presented new exculpatory evidence." Sistrunk v. Armenakis, 292 F.3d 669, 676 (9th Cir. 2002).  Although impeachment evidence can support actual innocence if it raises "sufficient doubt about the validity of [the] conviction," Carriger v. Stewart, 132 F.3d 463, 478, 481 (9th Cir. 1997), petitioner fails to meet this standard.

At best, the evidence proffered by petitioner reflects that: 1) based on information from a friend, A.B. was fearful that someone connected to petitioner or his counsel was attempting to obtain information from A.B. or sabotage his credibility;[3] 2) A.B. was terminated from his employment several months after petitioner's trial; 3) A.B.'s grades suffered during his parents' divorce proceedings; 4) after their divorce, A.B.'s parents disagreed over financial support of A.B. and his siblings; 5) petitioner's mother believed petitioner did not wear button down jeans or white underwear as described by A.B; 6) petitioner and his parents may not have lived in Tualatin during the time of the alleged abuse; and 7) the rooms and foundation of petitioner's house may not have been completed during the time frame that A.B. testified the abuse occurred.

---

[3] Notably, it is the opinion of only petitioner's attorney that A.B.'s reports concerning Arturo and his wife reflected "paranoid" behavior.  The police officer conducting the interview did not indicate such a belief in his report.

8 - OPINION AND ORDER

This evidence does not "significantly" undermine or impeach the credibility of A.B. or the specificity of his testimony, or otherwise rise to the level of probative evidence sufficient to support a Schlup claim. Gandarela, 286 F.3d 1086; see, e.g., Majoy v. Roe, 296 F.3d 770, 777 (9th Cir. 2002) (primary witness against petitioner later recanted his statements); Carriger, 132 F.3d at 478-79 (witness whose trial testimony led to petitioner's conviction later gave a sworn confession to the murder of which petitioner was convicted). The information in the police report and A.B.'s termination of employment were unrelated to the charges against petitioner and do not contradict evidence presented at trial.

While the remaining evidence *could* have provided potential grounds for impeachment, "speculative and collateral impeachment falls far short of showing actual innocence." Gandarela, 286 F.3d at 1086. To demonstrate actual innocence, a petitioner must be able to "show actual, factual innocence, not just legal insufficiency of the evidence." United States v. Ratigan, 351 F.3d 957, 965 (9th Cir. 2003). Petitioner's new evidence does not establish or even suggest that he was falsely accused, particularly in light of the evidence as a whole. See Exhibits 104-07.

Accordingly, I find that petitioner may not rely on the "miscarriage of justice" exception, and his unexhausted claims alleging counsel's failure to investigate and prosecutorial misconduct are barred by procedural default.

9 - OPINION AND ORDER

B.  Ineffective Assistance of Counsel

Petitioner's remaining claim asserts that his trial counsel rendered ineffective assistance by failing to object on confrontation grounds to the testimony of A.B.'s step-mother concerning statements made by A.B.'s sister.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. The Supreme Court's ruling in Strickland v. Washington, 466 U.S. 668 (1984) sets forth the "clearly established federal law" governing claims alleging ineffective assistance of counsel. Williams v. Taylor, 529 U.S. 362, 390 (2000). Under Strickland, petitioner must show that counsel's performance was deficient, and that the deficient performance prejudiced the defense and deprived him of a fair trial. Strickland, 466 U.S. at 687.

At petitioner's trial, A.B.'s step-mother testified that during the time of the abuse, A.B.'s sister, Andrea, telephoned her at work and stated that petitioner was in their house and frightening her. A.B.'s step-mother also testified that Andrea said that petitioner would not let A.B. out of the bedroom. Trial counsel objected to this testimony on hearsay grounds, but the trial court overruled the objection. Specifically, the trial court found that the testimony was not offered for the truth of Andrea's statements but rather to establish that A.B.'s step-mother had received telephone calls from Andrea, consistent with other testimony presented at trial. Therefore, the trial court found

10 - OPINION AND ORDER

that Andrea's out-of-court statements were not inadmissible hearsay. Petitioner's trial counsel subsequently requested a limiting instruction regarding this testimony. The trial court instructed the jury that only the "fact that the call was made, and not the truthfulness of was said, is [] to be considered by you." Ex. 106, p. 504.

In his PCR petition, petitioner asserted ineffective assistance of counsel based on counsel's failure to object on confrontation grounds. The PCR court found that Andrea's statements were inadmissible hearsay, and that the trial court "made an error" in admitting her statements. Nonetheless, the PCR court found that their admission did not prejudice petitioner.

Regardless of whether the PCR court found the trial court's hearsay ruling erroneous, the issue before this court is whether trial counsel was deficient by failing to object to the admission of Andrea's statements on confrontation grounds.

The fatal flaw in petitioner's claim is the fact that the trial court judge ruled that Andrea's out-of-court statements were non-hearsay statements. Therefore, any further objection on confrontation grounds would have been futile. See Tennessee v. Street, 471 U.S. 409, 413-15 (1985) (the admission of non-hearsay statements generally does not implicate the Confrontation Clause; United States v. Inadi, 475 U.S. 387, 398 n. 11 (1986) (accord). Further, at counsel's request, the trial court issued a limiting instruction and instructed the jury that they were not to consider

11 - OPINION AND ORDER

the truth of Andrea's statements.  A limiting instruction is an "appropriate way to limit the jury's use of [non-hearsay statements] in a manner consistent with the Confrontation Clause."  <u>Street</u>, 471 U.S. at 417.  Therefore, I find no deficiency in counsel's performance.

Even if counsel was deficient in not objecting on confrontation grounds, I find no resulting prejudice, given the trial court's hearsay ruling and limiting jury instruction, and the finding of the PCR court that no prejudice resulted from admission of Andrea's out-of-court statements.

## CONCLUSION

Petitioner's claims based on counsel's failure to investigate and prosecutorial misconduct are barred from review by procedural default.  Further, petitioner fails to establish that his trial counsel rendered ineffective assistance by failing to object to testimony on confrontation grounds.  Accordingly, petitioner's Petition For Writ of Habeas Corpus (doc. 1) is DENIED, and this action is DISMISSED.

IT IS SO ORDERED.

Dated this __7__ day of June, 2009.

                            /s/ Ann Aiken
                              Ann Aiken
           Chief United States District Court Judge

12 - OPINION AND ORDER